**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket Nos. 38543/38544**

| | | |
|---|---|---|
| **FREDY HEREDIA-JUAREZ,** | ) | **2012 Unpublished Opinion No. 505** |
| | ) | |
| **Petitioner-Appellant,** | ) | **Filed: June 5, 2012** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **STATE OF IDAHO,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **Respondent.** | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. G. Richard Bevan, District Judge.

Judgment dismissing petition for post-conviction relief, <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett, LLP, Boise; Robin Fyffe, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Nicole L. Schafer, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Fredy Heredia-Juarez appeals from the summary dismissal of his petition for post-conviction relief. He asserts that the district court erroneously dismissed his claims of ineffective assistance of trial and appellate counsel. We affirm.

**I.**

**BACKGROUND**

On December 15, 2006, Heredia-Juarez and several other individuals participated in the robbery of a credit union. According to Heredia-Juarez's appellate brief, those individuals included James John and Jesse Coates. Shortly thereafter, Heredia-Juarez and John became worried that Coates would inform the police that they had been involved in the robbery of the credit union as well as other robberies. According to the presentence investigation report, Heredia-Juarez, James John, Micheal John, and Nicole Baker took Coates to a remote location where Coates was fatally shot. Heredia-Juarez was charged with first degree murder, conspiracy

1

to commit murder, and three counts of robbery. Although Heredia-Juarez eventually admitted to participating in Coates's murder, he denied shooting him. In an apparent attempt to obtain a favorable plea agreement, he agreed to take a polygraph examination, during which he again denied that he shot Coates. The results of the examination indicated that his denial was deceptive.

Pursuant to a plea agreement, Heredia-Juarez pleaded guilty to first degree murder and to one count of robbery. In exchange for the guilty pleas, the State agreed to dismiss the conspiracy charge and the two other counts of robbery. The plea agreement further stated that the "State will cap the fixed portion of its sentencing recommendation at 35 years" and that by "accepting this offer the defendant waives his right to any appeals, to any Rule 35 motions and agrees to reserve only his post-conviction remedies." Heredia-Juarez moved to withdraw his guilty plea based on his assertion that he misunderstood the State's sentencing recommendation. The district court denied the motion and imposed a unified life sentence with thirty-five years fixed for the murder charge and a concurrent unified fifteen-year sentence with five years fixed for the robbery charge. Heredia-Juarez filed a direct appeal, which was dismissed, without opinion, by order of the Supreme Court "based on the fact that Defendant Heredia-Juarez waived his right to appeal and preserv[ed] only the right to pursue post-conviction remedies pursuant to the Rule 11 plea agreement he entered in the district court."

Heredia-Juarez filed a pro se petition for post-conviction relief and, with the assistance of counsel, an amended petition raising seven claims of ineffective assistance of trial and appellate counsel. The court granted the State's motion for summary dismissal, and Heredia-Juarez appeals.

## II.

## ANALYSIS

Heredia-Juarez asserts the district court erred by dismissing his petition without resolving issues of fact regarding his claims that: (1) his trial counsel provided ineffective assistance by failing to adequately explain the terms of his plea agreement, for convincing or coercing him into pleading guilty, and for failing to explain that the results of the polygraph examination could be used against him; and (2) his appellate counsel provided ineffective assistance by failing to appeal the denial of his motion to withdraw his guilty plea.

2

A petition for post-conviction relief under the Uniform Post Conviction Procedure Act (UPCPA) is civil in nature. *Charboneau v. State*, 144 Idaho 900, 903, 174 P.3d 870, 873 (2007). The petitioner must prove the claims upon which the petition is based by a preponderance of the evidence. *Id.* Summary dismissal of an application is the procedural equivalent of summary judgment under I.R.C.P. 56. "A claim for post-conviction relief will be subject to summary dismissal . . . if the applicant has not presented evidence making a prima facie case as to each essential element of the claims upon which the applicant bears the burden of proof." *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009) (quoting *Berg v. State*, 131 Idaho 517, 518, 960 P.2d 738, 739 (1998)). When the alleged facts, even if true, would not entitle the applicant to relief, the trial court may dismiss the application without holding an evidentiary hearing. Idaho Code § 19-4906(b), (c); *Charboneau*, 144 Idaho at 903, 174 P.3d at 873; *Stuart v. State*, 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990); *Cooper v. State*, 96 Idaho 542, 545, 531 P.2d 1187, 1190 (1975). If the petitioner's evidence raises a genuine issue of material fact which, if resolved in his favor, would demonstrate entitlement to relief, summary disposition is not permissible. Summary dismissal of an application for post-conviction relief may be appropriate even where the State does not controvert the applicant's evidence because the court is not required to accept either the applicant's mere conclusory allegations, unsupported by admissible evidence, or the applicant's conclusions of law. *Payne*, 146 Idaho at 561, 199 P.3d at 136; *Charboneau*, 144 Idaho at 903, 174 P.3d at 873; *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994). Therefore, on review of a dismissal of a post-conviction relief application without an evidentiary hearing, we determine whether a genuine issue of material fact exists based on the pleadings, depositions, and admissions together with any affidavits on file, and whether the petitioner's allegations, if true, show a right to relief. *Rhoades v. State*, 148 Idaho 247, 250, 220 P.3d 1066, 1069 (2009); *Charboneau*, 144 Idaho at 903, 174 P.3d at 873; *Ricca v. State*, 124 Idaho 894, 896, 865 P.2d 985, 987 (Ct. App. 1993).

Because the trial court rather than a jury will be the trier of fact in the event of an evidentiary hearing, summary dismissal is appropriate where the evidentiary facts are not disputed, despite the possibility of conflicting inferences to be drawn from the facts, for the court alone will be responsible for resolving the conflict between those inferences. *State v. Yakovac*, 145 Idaho 437, 444, 180 P.3d 476, 483 (2008); *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). That is, the judge in a post-conviction action is not constrained to

draw inferences in favor of the party opposing the motion for summary disposition, but rather is free to arrive at the most probable inferences to be drawn from uncontroverted evidentiary facts. *Hayes*, 146 Idaho at 355, 195 P.3d at 714.

To prevail on an ineffective assistance of counsel claim, the defendant must show that the attorney's performance was deficient and that the defendant was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Hassett v. State*, 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct. App. 1995). To establish a deficiency, the applicant has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988). To establish prejudice, the applicant must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Id.* at 761, 760 P.2d at 1177.

## A. Guilty Pleas

Heredia-Juarez asserts that trial counsel was "ineffective for convincing [him] to accept the plea agreement without ensuring that he fully understood the terms of the plea bargain." He presented this issue in his amended petition through two separate claims, as follows:

> [9](a). [Defense counsel] knew or should have known, that petitioner has limited ability to speak and read the English language. . . . That due to the above-stated language barrier, petitioner believed that the plea agreement into which he entered provided that the State of Idaho would be recommending at sentencing imposition of a sentence of no more than a thirty-five (35) year term. That had petitioner been made fully aware in Spanish of the true terms of the plea agreement, petitioner would not have entered into the same. . . .
>
> . . . .
>
> [9](c). That [defense counsel] knew of petitioner's assertions of his innocence in the underlying criminal case and of petitioner's desire to proceed with his "not guilty" plea and to proceed to jury trial on the charge(s). That notwithstanding this, said attorneys coerced petitioner into changing his plea to guilty and to entering into the plea agreement. That in support thereof, petitioner states and alleges that during the course of the change of plea hearing, said attorneys told petitioner what to say to the Court in response to inquiries from the Court in direct contravention of petitioner's stated position to said attorneys.

We first address the claim that counsel was ineffective for failing to explain that the State agreed only to limit the *fixed portion* of its sentence recommendation to thirty-five years. At a pretrial conference in this post-conviction case, the following exchange took place between Heredia-Juarez's attorney and the court:

4

COUNSEL: Your Honor, we are prepared today to withdraw certain claims from the amended petition in terms of the court's consideration.

Going to the amended petition for post-conviction relief on file in this case, numbered paragraph nine contains the various issues as raised by the defendant--or excuse me--by the petitioner.

Petitioner today, Your Honor, will withdraw the issues set forth in subpart A.

THE COURT: Regarding limited ability of counsel to speak Spanish?

COUNSEL: Yes, Your Honor.

THE COURT: All right.

Thus, Heredia-Juarez's claim regarding a misunderstanding of the recommended sentence, contained in paragraph 9(a) of his amended petition, was withdrawn by counsel, and it does not appear that the issue was preserved for appeal.[1]  Nevertheless, on appeal, Heredia-Juarez attempts to revive the issue by inserting it into his coercion claim.  Both parties address the issue in their appellate briefs without discussing the withdrawal of the claim.

Even assuming that the issue was preserved, it does not warrant relief because Heredia-Juarez has not demonstrated that he was prejudiced by his attorneys' performance.  He asserts, that he "believed that his attorney[s] had negotiated a plea bargain pursuant to which the state would recommend no more than thirty-five years," and that "[b]ut for [his] misunderstanding of the plea agreement, he would not have pled guilty and would have insisted on going to trial."  Assuming, without deciding, that counsel performed deficiently by not explaining the terms of the prosecution's offer, the problem was remedied by multiple in-court explanations of the agreement made at the change of plea hearing which were translated into Spanish for Heredia-Juarez by a court interpreter.  The prosecutor explained, "the entirety of the sentence for both the robbery and the murder will be a 35 year *to life* maximum recommendation."  (Emphasis added.)  The court then restated that "whether the state recommends 35 years *to life* on both cases to run concurrent or some combination of less than 35 years consecutive, the most that you would be facing, according to the state's recommendation, would be a *35 year fixed* sentence."  (Emphasis added.)  Heredia-Juarez responded, "That's what I understand."  The court again stated, "The state, as part of the plea agreement that we've talked about here, has agreed to recommend to this

---

[1]     The issue was discussed to some extent below, however, after it was withdrawn.

5

court no more than a sentence of *35 years fixed to life*.  Do you understand that?"  (Emphasis added.)  Heredia-Juarez responded, "yes."  Yet again, the district court stated,

> Let me talk to you again about the plea agreement in this case.  The State of Idaho has committed to promise that they will recommend to the sentencing court not to impose a sentence that would require you to be incarcerated on a *mandatory basis* for more than 35 years.  Do you understand that?

(emphasis added).  Heredia-Juarez responded, "yes."  Furthermore, the court explained that it was required to impose a sentence as follows:

> [W]ith regard to the murder charge, by law, *the court does have to impose a life sentence* with the minimum fixed portion of that sentence being ten years.  So, in other words, regardless of whatever recommendations are made or whatever the court does, you would not be parole eligible for at least ten years on a first degree murder charge.  Do you understand that?

(emphasis added).  Heredia-Juarez responded, "yes."  The court clearly explained what was meant by a fixed portion of a sentence, that the State would recommend no more than a thirty-five-year fixed portion, and that the statute required a unified life sentence.  *See* I.C. § 18-4004.  Heredia-Juarez repeatedly indicated that he understood, and that he did not have any questions.  The court's repeated explanations of the agreed upon recommendation, which were translated into Spanish, cured any potential prejudice that may have occurred by the attorneys' alleged failure to adequately explain the State's offer.  Because Heredia-Juarez could not establish prejudice, summary dismissal of the claim was appropriate.

Next, we turn to Heredia-Juarez's claim that his attorneys provided ineffective counsel by coercing him into pleading guilty.  Heredia-Juarez asserts that his attorneys provided him with specific words to use such as "aided and abetted" and "accomplice" during the entry of his guilty plea, but he has not alleged that his admissions were untruthful.[2]  Heredia-Juarez presented no

---

[2]    At the hearing on Heredia-Juarez's motion to withdraw his guilty plea, Heredia-Juarez was questioned by the prosecutor about the statements he made during the entry of his guilty plea as follows:
> Q. So when [the] judge asks you if you aided and abetted, what did you say?
> A. Yes.
> Q. Now is that true or not true?
> A. To a certain point, yes.
> Q. To a certain point, yes, you did aid and abet?
> A. Yes.
> . . . .

evidence that his attorney used any sort of intimidation or other improper tactics to pressure him into pleading guilty. Thus, the district court properly found that the claim of coercion was entirely conclusory. Absent any showing of coercion, Heredia-Juarez's claim is essentially that his attorneys were ineffective for advising him to plead guilty when he had a possible defense. Heredia-Juarez has not asserted that his attorneys' advice was based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective review, thus he has not stated a claim of ineffective assistance of counsel based on that advice. *See*, *e.g.*, *Dunlap v. State*, 141 Idaho 50, 60, 106 P.3d 376, 386 (2004). We agree with the district court that even if all the facts Heredia-Juarez asserted are true, Heredia-Juarez failed to establish either deficient performance or prejudice.

**B.     Polygraph Examination Results**

Heredia-Juarez also asserts that he would not have agreed to take the polygraph if trial counsel had explained either that the results of the polygraph exam could be used against him at sentencing, or that "he might fail the test even if he was truthful." The claim that counsel did not explain the possibility of a false negative result was not raised below, therefore, we do not address it. *E.g., Bradley v. State*, 151 Idaho 629, 262 P.3d 272, 277 (Ct. App. 2011) ("Generally, issues not raised below may not be considered for the first time on appeal."). Even if we assume

---

Q. When you told the judge, after talking to [counsel] . . . "I aided and abetted, I was an accomplice," was that true or not true?
A. Yes.
Q. So that's true?
A. Yes, that's what I told the judge.
Q. But you felt like you didn't want to say it, say that. Is it that you wanted to say it in different words?
A. Yes.
Q. Did you feel coerced to say, "I aided and abetted, I was an accomplice?"
A. Okay. I didn't feel that I was threatened or anything like that, just that that's what they wanted me to say. When I asked him what am I supposed to say, he told me to say that.
Q. But you didn't feel coerced?
        . . . .
A. Are you trying to say coerced means threatened?
Q. Threatened, promised, made you do something you didn't want to do.
A. No.

that counsel performed deficiently by not explaining that the results of the polygraph could be used against Heredia-Juarez at sentencing, Heredia-Juarez has not demonstrated prejudice. Heredia-Juarez does not dispute that, prior to the polygraph examination and in the presence of his attorney, he was informed that anything he said could be used against him in a court of law, and that he signed a document acknowledging his *Miranda*[3] rights. He has not demonstrated how he could have been prejudiced by his attorney's alleged failure to warn him that his statements could be used against him when the police told him that very thing.

Furthermore, Heredia-Juarez has not articulated how the attachment of the polygraph examination results--which suggested that he did shoot Coates--to the presentence investigation report affected his sentence. In his amended petition, Heredia-Juarez asserted, "the sentencing court took into consideration the results of the polygraph examination in determining its sentence imposed against petitioner." However, this is insufficient to demonstrate prejudice. The implication that Heredia-Juarez would have received a lesser sentence but for the sentencing court's use of the polygraph examination results is entirely conclusory. At sentencing, the district court indicated that it did place some "minimal" reliance on the validity of the polygraph results, but "[w]hether [Heredia-Juarez] pulled that trigger or whether he didn't does not alter the decision that I'm going to make here with regard to the ultimate sentence." Because the facts presented by Heredia-Juarez did not support a claim that he was prejudiced by his attorney's performance, the court did not err by summarily dismissing the claim.

## C.     Appellate Counsel

Finally, Heredia-Juarez asserts that the summary dismissal of his claim of ineffective assistance of appellate counsel was erroneous. Because this claim has been repeatedly modified and recharacterized, both in the trial court and on appeal, it is difficult for this Court to discern even what is the alleged deficiency of appellate counsel that we are asked to address.

Heredia-Juarez's amended petition contained a single claim of ineffective assistance of appellate counsel. It alleged that his appellate attorney should have raised an issue on direct appeal based on "the State's use (and the Court's consideration) of the results of the . . . polygraph examination during the course of sentencing." At the hearing on the State's motion

---

[3]     *See Miranda v. Arizona*, 384 U.S. 436, 479 (1966).

for summary dismissal, however, Heredia-Juarez did not argue this claim at all. Instead, at the outset of that hearing, Heredia-Juarez's counsel made the following comments:

> Going to [claim] 9G, there is an error in the amended petition for post-conviction relief. I have discussed that error with [the prosecutor]. It accurately sets forth the issue for this court's consideration but incorrectly sets forth the issue that was set forth in the notice of appeal that went to the Idaho Supreme Court.
>
> Specifically, the issue that did go up to the Supreme Court was, in fact, whether or not the trial court had erred in denying the defendant's motion to set aside or withdraw his guilty plea. Again, I apologize for that error; but again, we need to make the record clear there.

Then, post-conviction counsel presented argument related to Heredia-Juarez's direct appeal as follows:

> Finally, Your Honor, going to the appellate issue, that is a difficult issue in terms of the petitioner's position here today. It is clear, as indicated by [the prosecutor], that the petitioner waived his right to appeal based upon the plea agreement in this case as well as a recitation of the court at the time of the change of plea hearing. What we are asking the court to consider is whether or not it is reasonable and enforceable, or certainly intended by the parties, that that waiver of appeal rights would extend to the defendant's right to appeal from the court's denial of his motion to withdraw a guilty plea.
> 
> . . . .
>
> And so, again, frankly, the honor--or Your Honor, excuse me--the only issue is to the waiver of appellate rights as to whether it was the intent of the parties, that it would extend to a subsequent motion by the defendant to withdraw his guilty plea and essentially start over, that is, rescinding the plea agreement, and then from that attempted rescission of the plea agreement, he attempts to appeal to the Idaho Supreme Court.
>
> That issue, I don't think, is necessarily clear. Frankly, then, we get into some issues of conditional pleas under Rule 11 and things like that; but again, that didn't happen here.
>
> Ultimately, Your Honor, and in summary, we have a petitioner-defendant here who really believed that he was looking at 35 years on the top end, that as soon as he discovered through discussions with his counsel after the change of plea hearing, that that was not the case, he instructed counsel to move to withdraw his guilty plea. [Defense counsel] took over in the case, did a nice job of arguing that motion to Judge Stoker. Ultimately, that was denied. The defendant appealed. The appeal was dismissed. And now we're here before this court.

In this argument, counsel below never identified any allegedly deficient act or omission of Heredia-Juarez's appellate counsel. Rather, he appeared to be arguing that the district court should, in substance, overrule the Idaho Supreme Court's order dismissing the direct appeal

9

insofar as the appeal raised a claim of error in the denial of Heredia-Juarez's motion to withdraw his guilty plea.

Now on appeal to this Court, Heredia-Juarez contends that he has a legitimate claim of ineffective assistance of appellate counsel, but again never identifies the specific act or omission of counsel that is alleged to be deficient. In a footnote in his appellant's brief, Heredia-Juarez disputes the representation of his attorney below that the denial of Heredia-Juarez's motion for withdrawal of the guilty plea was raised on direct appeal, but since this is mentioned only in a footnote, it does not appear to be the basis of his claim of ineffective assistance of appellate counsel. Further, the assertion that this claim of error was not raised in Heredia-Juarez's direct appeal is not supported by anything in the record before us.

The only other possibly-asserted deficiency of appellate counsel that we can infer from the appellant's brief is drawn from the following sentence: "As reflected in the Supreme Court's order, appellate counsel did not oppose the motion to dismiss and the court did not consider whether denial of the motion to withdraw guilty plea was precluded by the appeal waiver." However, if that is the alleged deficiency of appellate counsel that Heredia-Juarez seeks to assert on appeal, it was neither pleaded nor argued below nor supported by any evidence in the record on appeal. Accordingly, Heredia-Juarez has demonstrated no basis to reverse the dismissal of any claim of ineffective assistance of appellate counsel that can be divined from the proceedings in the trial court.

### III.

### CONCLUSION

The district court properly dismissed Heredia-Juarez's claims of ineffective assistance of trial counsel because Heredia-Juarez did not demonstrate prejudice. Any claim regarding ineffective assistance of appellate counsel that Heredia-Juarez is now attempting to assert on appeal was not raised in the petition or amended petition or argued to the district court, and is unsubstantiated by any evidence. Accordingly, we affirm the summary dismissal of the petition for post-conviction relief.

Chief Judge GRATTON and Judge GUTIERREZ **CONCUR.**

10